IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:13-CR-239-D-1

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| DWIGHT EDWARD CARTER, ) | |
| ) | |
| Defendant. ) | |

On May 15, 2020, Dwight Edward Carter ("Carter" or "defendant") moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 111]. On May 15, 2020, Carter filed an identical motion for compassionate release [D.E. 112]. On June 18, 2020, Carter amended the motion. See [D.E. 116]. On August 28, 2020, Carter, through counsel, filed a memorandum in support [D.E. 117]. On September 11, 2020, the government responded in opposition [D.E. 121]. On September 24, 2020, Carter replied to the government's response [D.E. 124]. Carter also moved for appointment of counsel [D.E. 128, 129].[1] On April 29, 2021, and September 14, 2021, Carter moved for "immediate compassionate release" [D.E. 127, 129].[2] Carter has also moved to challenge subject-matter jurisdiction in his criminal case [D.E. 109] and moved for a rehearing on the same order [D.E. 110].[3] As explained below, the court denies Carter's motions.

---

[1] The court denies these motions as moot.

[2] The court considers these motions with Carter's original motions for compassionate release and the memorandum in support.

[3] The court denies these motions as meritless.

I.

Carter is a violent recidivist. On February 10, 2014, pursuant to a written plea agreement, Carter pleaded guilty to interference with commerce by threats or violence (count one) and brandishing a firearm in furtherance of a crime of violence (count two). See [D.E. 29]. On June 10, 2014, Senior United States District Judge Malcolm J. Howard held a sentencing hearing. Judge Howard adopted the facts set forth in the Presentence Investigation Report ("PSR") and resolved Carter's motion for downward departure. See [D.E. 44, 45]; Fed. R. Crim. P. 32(i)(3)(A)–(B). After thoroughly considering the arguments of counsel and all relevant factors under 18 U.S.C. § 3553(a), Judge Howard sentenced Carter to 48 months on count one and 84 months' consecutive imprisonment on count two, for a total term of 132 months' imprisonment. See [D.E. 44, 45]. Carter did not appeal.

On January 9, 2018, Carter filed moved to vacate his sentence pursuant to 28 U.S.C. § 2255 See [D.E. 62]. Carter filed additional motions under section 2255. See [D.E. 63, 72, 75, 76, 79, 80, 90]. On April 17, 2020, Judge Howard granted the government's motion to dismiss Carter's section 2255 motions. See [D.E. 99, 100]. On April 27, 2020, Carter appealed. See [D.E. 105]. On September 22, 2020, the United States Court of Appeals for the Fourth Circuit granted Cater's motion to voluntarily dismiss his appeal. See [D.E. 122].

On May 15, 2020, Carter moved for compassionate release. See [D.E. 111]. On May 15, 2020, Carter filed an identical motion for compassionate release. See [D.E. 112]. On September 11, 2020, the government responded in opposition. See [D.E. 121]. On September 24, 2020, Carter replied to the government's response. See [D.E. 124]. On April 29, 2021, Carter moved for "immediate compassionate release[.]" [D.E. 127]. On September 14, 2021, Carter again moved for compassionate release. [D.E. 129].

II.

On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the safety of another person or the community. Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements" of the United States Sentencing Commission (the "Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including: (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with a serious deterioration in physical and mental health due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another

3

extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.[4] Application note 2 states

---

[4] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

   (A) Medical Condition of the Defendant.—

   (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

   (ii) The defendant is—

   (I) suffering from a serious physical or medical condition,

   (II) suffering from a serious functional or cognitive impairment, or

   (III) experiencing deteriorating physical or mental health because of the aging process,

   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

   (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

   (C) Family Circumstances.—

   (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

   (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

4

that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, the fact "that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. High, 997 F.3d 181, 186 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330–31 (4th Cir. 2021), cert. denied, No. 21-5624, 2021 WL 4733616 (U.S. Oct. 12, 2021); United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Rather, "[section] 1B1.13 only applies when a request for compassionate release is made upon motion of the Director of the [BOP]." Kibble, 992 F.3d at 330–31. Nevertheless, section 1B1.13 provides informative policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See High, 997 F.3d at 186; McCoy, 981 F.3d at 284. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section

---

(D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

5

3553(a) factors. See, e.g., McCoy, 981 F.3d at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–08 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

In his motion for compassionate release, Carter claims he exhausted his administrative remedies. See [D.E. 117] 1–2; [D.E. 117-1]; [D.E. 127] 4; [D.E. 129] 3. Carter claims that he filed a request in the manner requested by the warden on April 22, 2020, and May 6, 2020, and received no reply. See [D.E. 117-1]. Carter has not provided any documentation about his requests to the warden. Regardless, the government has not invoked section 3582's exhaustion requirement. Cf. United States v. Muhammad, 16 F.4th. 126, 130 (4th Cir. 2021). Accordingly, the court addresses Carter's motion on the merits.

Carter seeks compassionate release pursuant to section 3582(c)(1)(A). In support, Carter cites the COVID-19 pandemic, his health conditions, his rehabilitative efforts, and his release plan. See [D.E. 112, 117, 127, 129].

As for the "medical condition of the defendant" policy statement, the policy statement requires that the defendant be "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Carter argues that his obesity, diabetes, hypertension, anxiety disorder, history of smoking, sleep apnea, hyperlipidemia, anxiety disorder, bipolar disorder, history of stroke, and sickle cell trait place him at heightened risk of serious infection from COVID-19. See [D.E. 117] 2, 5. Carter also argues that his latent tuberculosis, sleep apnea, sickle cell trait, hyperlipidemia, and

6

mental health issues make self-care difficult in prison. See id. at 5–6. While several of Carter's conditions are not risk factors for severe COVID-19 infection, some of his conditions are recognized risk factors. See Centers for Disease Control, Groups At Risk for Severe Illness, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Dec. 27, 2021). The record does not indicate whether Carter has been vaccinated. However, BOP has diligently pursued vaccination in its facilities, offering COVID-19 vaccines to staff and inmates. See Bureau of Prisons, BOP's COVID-19 Response, https://www.bop.gov/coronavirus/overview.jsp#bop_covid-19_response (last visited Dec. 27, 2021). BOP has also made extensive efforts, beyond vaccination, at controlling and containing COVID-19 and has greatly reduced to infection and spread rate in its facilities. See id. As of December 27, 2021, FCI McCreary, where Carter is incarcerated, has no inmate or staff confirmed COVID-19 test positives. See https://www.bop.gov/coronavirus (last visited Dec. 27, 2021). Given Carter's conditions, the BOP likely has provided Carter the opportunity to be vaccinated against COVID-19. See id. Regardless of Carter's decision on vaccination, the wide availability of COVID-19 vaccines generally greatly diminish Carter's risk from COVID-19. Cf. United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."); see also United States v. Baeza-Vargas, No. No. CR-10-00448-010-PHX-JAT, 2021 WL 1250349, at *2–4 (D. Ariz. Apr. 5, 2021) (collecting cases showing the "growing consensus" of district courts denying compassionate release when an inmate is vaccinated against COVID-19).

Carter also argues that his latent tuberculosis, sleep apnea, sickle cell trait, hyperlipidemia, and mental health issues make self-care difficult in prison. See [D.E. 117] 5–6; [D.E. 127] 17.

7

However, Carter's BOP Medical records indicate regular medical treatment. For example, he has been proscribed medicine for his hypertension, diabetes, and hyperlipidemia. See [D.E. 118] 2–3, 8. He has also been treated for his mental health issues. See id. at 6–7.[5] Accordingly, reducing Carter's sentence is inconsistent with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

Carter also raised the "age of the defendant" policy statement. See [D.E. 127] 10. The policy statement applies where "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13 cmt. n.1(B). Carter is 52 years old, therefore, the "age of the defendant" policy statement does not apply to him.

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, Carter's health conditions, his efforts at rehabilitation, and his release plan are compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). Carter offers a release plan that includes living with his sister and seeking part-time restaurant employment. See [D.E. 117] 8. However, the wide availability of COVID-19 vaccines greatly diminish the risk to Carter from COVID-19 whether he is in prison or not. Cf. Broadfield, 5 F.4th at 803; Baeza-Vargas, 2021 WL 1250349, at *2–4. Moreover, and in any event, the section 3553(a) factors counsel against reducing Carter's sentence. See High, 997 F.3d at 187–91; Kibble,

---

[5] Although Carter claims to have bipolar disorder, see [D.E. 117] 2, his BOP medical records do not indicate a bipolar diagnosis. See [D.E. 118].

8

992 F.3d at 331–32; United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

Carter is 52 years old and is incarcerated for interference with commerce by threats and violence and brandishing a firearm in furtherance of a crime of violence. See PSR [D.E. 37] ¶¶ 1–10. Carter robbed an insurance agency, holding an employee at gunpoint and demanding money. See id. ¶ 6. Carter also has a long and violent criminal history. See id. ¶¶ 13–38. He has convictions spanning four decades including convictions for possession of stolen goods or property (three counts), misdemeanor assault with a deadly weapon, felony assault with a deadly weapon inflicting serious injury, felony breaking and entering (nine counts), possession of a weapon of mass destruction, felony possession of burglary tools, assault on a female (three counts), resisting or obstructing a public officer, second degree kidnaping, felony common law robbery, damage to personal property, assault on a government official, larceny (four counts), felony larceny after breaking and entering (sixteen counts), breaking into a coin machine, attempted breaking and entering, felony breaking and entering into a motor vehicle (seven counts), attempted larceny (four counts), habitual felon, and conspiracy to commit felony larceny. See id. He has performed poorly while in custody and on probation and supervision and committed several new offenses while he was on probation or supervision. See id. ¶¶ 13–14, 24, 30, 35, 37.

Carter has made some positive efforts while federally incarcerated. He has completed multiple classed and programs. See [D.E. 117] 8. He works as a cook at his current facility and has had other jobs at other facilities. See [D.E. 117] 8; [D.E. 117-4] 1–2. Carter, however, has had several serious infractions while incarcerated including infractions for assaulting without serious injury, refusing to obey an order, giving/accepting money without authorization, and phone abuse. See [D.E. 121-1]

9

The court must balance Carter's mixed record while federally incarcerated with his serious criminal conduct, violent and lengthy criminal history, poor performance on probation and supervision, the need to punish him, the need to promote respect for the law, the need to protect society, and the need to deter others. Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 187–91; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). The court also has considered Carter's potential exposure to COVID-19, his health conditions, his rehabilitative efforts, and his release plan. The court recognizes that Carter plans to live with his sister and seek employment at a restaurant. See [D.E. 117] 8. Having considered the entire record, the extensive steps that the BOP has taken to address COVID-19, the section 3553(a) factors, Carter's arguments, the government's persuasive response, the need to punish Carter for his serious criminal behavior, to incapacitate Carter, to promote respect for the law, to deter others, and to protect society, the court denies Carter's motion for compassionate release. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); High, 997 F.3d at 187–91; Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

As for Carter's request for home confinement, see [D.E. 116] 1, Carter seeks relief under the CARES Act. The CARES Act does not provide this court with the authority to grant home confinement. See United States v. Brummett, No. 20-5626, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020) (unpublished) ("[T]he authority to grant home confinement remains solely with the Attorney General and the BOP."); United States v. McCoy, No. 3:19-CR-35-KDB-DCK, 2020 WL 5535020, at *1–2 (W.D.N.C. Sept. 15, 2020) (unpublished); United States v. Gray, No. 4:12-CR-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (unpublished). To the extent

10

Carter requests that the court merely recommend home confinement to the BOP, the court declines. Thus, the court dismisses Carter's request for home confinement.

III.

In sum, the court DENIES defendant's motions for compassionate release [D.E. 111, 112, 127, 129], and DISMISSES defendant's request for home confinement. The court DENIES as moot defendant's motions to appoint counsel [D.E. 128, 129] and motion to amend/correct the motion for compassionate release [D.E. 116]. The court DENIES as meritless defendant's remaining motions [D.E. 109, 110].

SO ORDERED. This **28** day of December, 2021.

JAMES C. DEVER III
United States District Judge